Moncure, J.
after stating the case, proceeded :
If the question were res integra, “ Whether a deed of trust conveying all the property of a debtor for the benefit of such of his creditors as may within a specified time release him from all further claims; and providing that the surplus of the trust fund after satisfying the accepting creditors should be paid to the debtor, is valid against the creditors who do not accept?” I would be inclined to answer it in the negative. While the many cases on this subject are conflicting, I think the preponderance is against the validity of such a deed. The cases are collected in 1 American Leading Cases, p. 69-85. This Court however has decided in favour of the validity of such a deed; Skipwith’s ex’or v. Cunningham, 8 Leigh 271; and while I do not approve, I yet bow to the authority of that decision. That case expressly recognizes the distinction taken by Chancellor Kent in Seaving v. Brinkerhoff, 5 John. Ch. R. 329, that to make such a deed valid it must convey all, and not a part only, of the debtor’s property. And as the deed in this case does not profess to convey, and did not in fact convey, all of the debtor’s property, it might be contended that the deed *465 was on that ground invalid. The property however not included in the deed, was probably of small value, consisting, as appears from the schedule, of dioses in action to the amount of 131 dollars 65 cents, an interest in lands lying in western Virginia, forfeited for nonpayment of taxes, three old stoves See., and it would therefore perhaps be proper to say in this case, as was said in the case of Skipwith’s ex’or v. Cunningham, that “ the deed essentially complies with the requirements of the law.”
But conceding that such a deed may be valid, it is certainly important to its validity that the creditors who claim the benefit of it should take no unfair advantage of the other creditors. The transaction in its very nature requires the utmost fairness in the dealings of the parties with each other. A debtor in failing circumstances proposes to surrender all his property for the equal benefit of all his creditors who will release him from all further claims; and he executes and puts on record a deed for that purpose. His object is to obtain a release from all his creditors, and to be disembarrassed in his future operations; and he offers, as the price of this relief, to make a full and fair surrender of all his property, and to place his creditors on the footing of equality. It is proper that his creditors should be notified of his offer a reasonable time before the expiration of the period limited for its acceptance, in order that they may obtain such information as will enable them to exercise their choice with discretion. It is proper that the creditors should have an opportunity of acting in concert; and it is natural and reasonable that they should so act. In this case it was especially so ; as, when the deed was executed, it was extremely doubtful whether it would be valid if accepted. The deed bears date the 12th of May 1837. The case of Skipwith v. Cunningham was decided at April term 1837. If decided at the date of the deed, the decision was not *466 then reported, and could only have been known to a very few. At that time many counsel would have advised that such a deed would be invalid; and all wou|(j kav.e a(jvise(j that its validity would at least extremely doubtful. Whether such a deed would be invalid, or of doubtful validity, it would have been unwise in the creditors to accept it; for by accepting it they would have tied their own hands, and might have defeated the very object they had in view. In this case therefore there was a double motive for concert among the creditors ; and accordingly the evidence shews that they did act in concert; at least so far as to determine among themselves that they would not accept the deed. Durham proves that about ten days after the deed was executed, Mr. Crane a creditor, stated that he had examined the deed, was not satisfied with it, and did not consider it good for any thing ; and proposed that another ■deed with different provisions should be executed. To this proposition Durham assented, and at Crane’s instance went to see the other creditors. The first he saw was Phippen, who approved the arrangement proposed by Mr. Crane, expressed his willingness to do whatever the other creditors thought most advisable, and declared that he would not sign the deed that had been admitted to record. After this express disclaimer of the deed by Phippen, it may be doubted whether he could retract his disclaimer and accept the deed. But certainly he could not do so without informing the other creditors in time to enable them to accept the deed within the 30 days.
Now if the claim of the schedule creditors stood alone upon the evidence of Durham, supported as it is by corroborating circumstances, I would regard it as not overthrown by the only countervailing evidence in the case, which is to be found in the answer of Phippen. It is contended that that answer is responsive to the bill and can only be overthrown by the evidence of *467 at least two witnesses, or one witness and corroborating circumstances. I do not consider that answer entitied to so much weight. It was not filed until about five years after the bill and the answer of Mieure, and four years after the depositions of Durham and Mieure were filed. In all of these documents it was expressly charged or proved that Phippen, or Mallory & Phippen, had consented that the deed should be inoperative, and that they were guilty of a fraud in afterwards accepting the deed or attempting to set it up for their benefit against the other creditors. Such a charge if untrue should be promptly denied; and if the denial be long postponed, it must lose its weight in the same proportion. The answer too is brief and general, though the charge is full and specific. On the other hand the evidence of Durham is corroborated by the circumstance already stated, that what he proves might naturally and reasonably have been expected to occur; and by the further circumstance, that the conduct of the non-accepting creditors is almost inexplicable on any other hypothesis. They probably would not have remained quiet but for an agreement or understanding among all the creditors that the deed would not be aceepted. But for such an agreement or understanding, it is hardly credible that (the debtor and creditors residing in Richmond where the deed was recorded,) the debtor and non-accepting creditors, or some of them, would not have gone to the clerk’s office on the last of the 30 days to see if any of the creditors had signed the deed.
But the claim of the schedule creditors does not stand alone on the evidence of Durham, supported as it is by corroborating circumstances. Mieure proved that some days previous to the last day upon which, according to the terms of the deed, the creditors had a right to sign it, all the creditors therein named, as deponent believed, and certainly Mallory & Phip *468 pen, determined not to accept the deed, but to suffer it to be inoperative by the expiration of the 30 days without signing the same. Deponent was confident ^is was the understanding and agreement among ap saj¿[ creditors.
Now here are two witnesses positively testifying to a fact which is decisive of this case, to wit, the fact that within the 30 days the creditors, and certainly Phippen, agreed not to accept the deed, and if the answer of Phippen had denied this fact in the most positive and explicit terms, and were entitled to all the weight to which an answer can be entitled, it would be insufficient to resist the force of the concurring testimony of these two witnesses.
But Mieure proved another fact which is decisive of this case, to wit, that he and Mallory signed the deed with the express understanding and agreement, that, if carried out by a sale of the property therein mentioned, it should enure to the benefit of every creditor who should think proper to take under the same, in the same manner and to the same extent as though they had also on that day signed said deed. What evidence is there in the case to disprove this decisive fact thus proved by the evidence of Mieure? Not a particle, unless the deposition of Mallory, Avhich will be presently noticed, be considered as evidence in the case. It is true that Phippen in his answer denies that Mallory accepted and signed the deed in the manner and upon the terms set forth in the bill. But that denial was not made on the personal knowledge of Phippen; and if made on any information at all, such information must have been derived from Mallory. The denial therefore is not evidence ; and certainly cannot weigh down the evidence of Mieure.
It will not do for Mallory to say that Phippen could not bind him by agreeing not to accept the deed. Nor for Phippen to say that Mallory had no right “ to re *469 nounce the said deed for the firm, and to surrender without consideration valuable in law, the rights of the firm under the deed.” If these parties were right in saying that one could not bind the other, yet certainly each could bind himself, and as each did bind himself by agreeing to that which is decisive against the claim of the firm, therefore the firm is as much bound as if they had both expressly agreed not to accept the deed, or to accept it for the benefit of all the creditors. But I apprehend they are not right in so saying; and that the said several agreements of Mallory & Phippen for the firm, are binding on the firm and each member of it.
Durham and Mieure are both competent witnesses. Durham is disinterested ,• and the interest of Mieure is against his testimony.
But it is contended that the Court below erred in overruling the motion of Mallory & Phippen to continue the case, in order that they might have the benefit of the deposition of Mallory, which they were in daily expectation of receiving, and also in overruling their motion to set aside the decree after said deposition was returned.
The suits were instituted in 1837. The charges made in the bill of the schedule creditors were of such a nature as to render it proper that if they could be disproved by Mallory, his deposition should be taken and filed without any unnecessary delay. He was at that time in Richmond; for in November 1837, the subpoena was returned executed upon him. When he left Richmond or the state, does not appear; nor is there any trace in the record of any effort to take his deposition until March 1843 ; six years after the filing of the bill; when the suits were continued on the motion of Mallory & Phippen, and on the affidavit of Phippen that he had in the preceding December, sent the necessary papers to St. Louis, Missouri, for the purpose of taking *470 Mallory’s deposition, but that they had miscarried, and therefore the deposition had not been taken. At the next term, to wit, on the 28th of June L843, when the suits were again called for hearing, Mallory & Phippen mo7e(j for another continuance for the same cause, and the Court overruled the motion. It seems to me that without accounting for the great apparent default which had occurred in not taking the deposition before, Mallory &• Phippen had no right to have the trial of the suits longer delayed on that ground, and that the Court, in its discretion, might properly overrule the motion.
But let us consider the deposition as in the case ; and enquire first whether it be competent evidence, and secondly what is its effect, if competent. First, is he a competent witness ? He certainly is not, unless he be rendered so by a release or assignment of his interest, and there is no evidence in the record of any such release or assignment, or that his interest which certainly once existed, has ever, in any manner, been extinguished. The only allusion to-.the subject of his interest is contained in the affidavit of Phippen before referred to, in which he says, “that the said Mallory has now no interest in them (the suits) whatever, his whole interest having been long since transferred to this affiant” &c. But this is certainly not sufficient to disprove his interest. Secondly, suppose that he is a competent witness, what is the effect of his evidence ? It might be supposed to be unnecessary to answer this question; supposing the witness to be incompetent, as he undoubtedly is, on the record as it now stands. But it is to be remembered that the deposition of Mallory was not filed, and the exception to the competency of the witness taken, until after the dismission of the bill of Mallory & Phippen. Mallory may in fact have no interest in the controversy, as is stated in the affidavit of Phippen before mentioned; and the fact that he has none, may have been, or may yet be, proved in the suit of the *471 schedule creditors, which is still pending in the Court below. In this view of the case it becomes important to answer the question as to the effect of Mallory’s evidence, supposing him to be competent; and I will therefore now proceed to do so. He testifies under very unfavourable circumstances. In 1837 when the deed was executed and the transactions connected with it were all fresh, a full and specific detail of them was made in the bill of the schedule creditors, and the answer of Mieure to the bill of Mallory & Phippen, and the conduct of Mallory was thereby deeply implicated. He never answered the charges made against him; and never gave his deposition in the suits until June 1843, six years after the suits were instituted; when his deposition was taken in Missouri. The deposition is equivocal and unsatisfactory; and under the circumstances can have little weight against the testimony of a witness testifying against his interest and at a time when the transaction to which the testimony relates were all fresh in the memory of the witness. But admit the statement of Mallory to be strictly and literally true; and what does it shew? “I recollect” says the witness, “ that in the month of June 1837 I went in company with Thomas Mieure from the Bank of Virginia to the Hustings court office, and then and there each of us in each other’s presence, signed the deed made by Durham, as I before referred to ; and the said Mieure remarked at the same time that he should not avail himself of its benefits to the exclusion of other creditors, but merely signed it so as to make the same binding on the said Durham. I did not give my assent to that or any other remark which went to shew that I signed it for the same purpose.” But did he express his dissent to that remark of Mieure ? He does not say that he did, as he certainly would have said, had the fact been so. Then when the remark was made by Mieure, Mallory according to his own admission was silent: And his silence was *472 either designed to give consent, or to induce Mieure to believe that he consented, and prevent him from informing the other creditors. For Mallory must have known ha(j given the slightest intimation of dissent ]\/[jeure would have at once informed the other creditors, so that they might by signing the deed in time, defeat the object of Mallory and accomplish that of Mieure. If the silence of Mallory was designed to give consent, then Mallory & Phippen are bound by such consent. If it was designed to deceive Mieure, it was a fraud which can give Mallory & Phippen no advantage over the other creditors.
If therefore the case stood alone upon the statement of Mallory, that statement would be fatal to the pretensions of Mallory & Phippen to the whole of the trust fund in exclusion of the schedule creditors.
The great difficulty I have had in this case, has been in determining whether Mallory & Phippen should be allowed to participate at all in the distribution of the fund.
In attempting to secure to themselves the benefit of the deed of trust in exclusion of the schedule creditors, they attempted to perpetrate a fraud. They came into a Court of equity with unclean hands; and one of the established maxims of that Court required it, I think, to dismiss their bill; “for the Court will never assist a wrong doer in effectuating his wrongful and illegal purpose.” 1 Story’s Equ. Jur. § 64, e. But it must be remembered that the schedule creditors also came into a Court of equity; and though they came in with clean hands, yet they came asking equity. And another maxim of the Court, one which, of all others, it perhaps most delights to enforce, certainly most often enforces, declares that “ he who asks equity must do equity.” Then the question is, Is there any equity which these schedule creditors should be required to do to the accepting creditors, as the price of that equity which is *473 demanded by the former ? I think there is. The deed of trust was not in itself fraudulent; and was accepted by Mieure, if not Mallory also, with the understanding that it sh8uld enure to the benefit of all the creditors. They seem therefore to have acquired a legal advantage, and to have some equity. And the schedule creditors cannot deprive them of that legal advantage without the aid of a Court of equity; and cannot obtain that aid without doing equity. But what is the measure of that equity ? Certainly not the payment of the whole of the claims of the accepting creditors; for that would exhaust the whole trust subject, and be against the understanding with which the deed was accepted, besides giving effect to the unlawful purpose to which Mallory & Phippen afterwards sought to pervert their acceptance of the deed. The answer to the question is given by another maxim of the Court, that “ equality is equity;” or, as it is sometimes expressed, “equity delighteth in equality.” 1 Story's Equ. Jur. § 64, f. The application of this maxim to the case will carry into effect the understanding with which the deed was accepted, and will do equal justice to all the creditors.
But a question still remains to be answered, and that is, whether the creditors shall be required to release their debtor Durham from all further claim on account of the debts due them after the fund aforesaid shall have been exhausted in the payment of said debts, according to a provision to that effect in the deed ? With all deference for the opinions of those of my brethren who differ in opinion with me on this question, I think the creditors should not be so required. To require them to do so, would be to give effect to the deed against the express agreement of all the creditors that it should be ineffectual; would be to take away from the schedule creditors rights acquired by legal diligence, without any necessity whatever for so doing. All that the accepting creditors can require is, to be allowed to *474 participate pro rata in the distribution of the fund. When that is accorded to them, why should any other terms be imposed on the schedule creditors? Why sj10u^ tiley be required to release the debtor ? The ^epting creditors will not be benefitted by the release of the debtor. Their interest is the other way. The schedule creditors ask no equity against the debtor: against him their rights both at law and in equity are complete. He not only has no equity, but demands no equity in the case. He is a defendant in both of the bills, and answers neither of them. According to the pretensions of Mallory & Phippen, they and Mieure would get the whole trust fund and release the debtor, while the entire claims of the schedule creditors would be left unsatisfied and liable to be enforced against him. According to the pretensions of the schedule creditors they would get the whole trust fund, leaving the balance of their claims, and the entire claims of the accepting creditors, or at least of Mallory & Phippen, unsatisfied and liable to be enforced against the debtor. In this conflict of pretensions the debtor has no legal or equitable interest, and claims none. In his deposition he maintains the pretensions of the schedule creditors, which leave him bound for the entire amount of the claims against him after applying the trust fund to their payment. The only question is whether the schedule creditors should get all under their execution liens, or allow the accepting creditors to participate with them. These two classes of creditors are alone interested in the solution of this question. It is a matter of indifference to the debtor whether the balance due by him after the application of the trust fund be due to one class or other of his creditors. Why then should a release be required of the creditors ? Why should this measure of relief be forced upon a debtor not seeking it ? Not entitled to it according to his own evidence in the case ? I am for giving no effect whatever to the deed of trust except *475 to the extent of affording an opportunity to a Court of equity for the application of its favourite maxims, that “ he who asks equity must do equity,” and “ equality is equity,” and it is with great difficulty that I go even to that extent in this case.
The Court below in dismissing the bill of Mallory & Phippen did not intend to decide that they were not entitled to participate in the distribution of the fund, but reserved that question for future decision in the suit of the schedule creditors. In that suit, to which all the parties to this suit are defendants, the fund can, and ought I think, to be apportioned pro rata among all the creditors.
I am for affirming the decree.
Daniel, J.
I have not been able to discover anything on the face of the deed out of which this controversy has arisen, or in the history of the case, from which to draw the conclusions that the said deed is fraudulent in fact or in law. The right of a debtor, in making a deed of trust upon all of his estate for the benefit of his creditors, to insert in the deed the condition that all who should accept its provisions should release him from all further demand on account of the debts secured, was recognized by this Court in the case of Skipwith's ex'or v. Cunningham, 8 Leigh 271; and reason and authority are there furnished for the distinction made between the conveyance of the whole and the conveyance of part only of the debtor’s property upon such condition.
There is, I think, nothing in the case from which to infer that the deed made by Durham originated in any purpose or design to conceal from his creditors or secure to himself any portion of his property. It is true that the schedule rendered by him on taking the oath of an insolvent debtor, contains a list of small debts due to him, and a few articles of personal property of trifling *476 value not mentioned in his deed. There is no proof however that these debts existed, or that he owned these articles of property at the date of the deed. ■£ suc]1 proof existed, or the probability of the existence of the fact is to be inferred from the short space of time that elapsed between the date of the deed and the time of surrendering the schedule, it would, in the absence of all other evidence of fraud, and in view of the inconsiderable value of the subjects in question, be harsh, I think, to refer the failure to embrace them in the deed to any dishonest purpose on the part of the grantor. The charitable and fair presumption is, that he omitted them from forgetfulness, if indeed he was the owner of them when he made the deed.
The deed may therefore be justly treated as one dthe whole of the debtor’s property to the demans of his creditors, and the objection made to the qdiidition which it imposes on the creditors, is answered by the decision of this Court in the case above cited, -^phe deed is, I think, unassailable on this ground or on any other so far as the grantor is concerned; and the Circuit court erred in dismissing the plaintiif’s bill on the ground that the deed was fraudulent and void. The conduct of the plaintiffs has however been such as, in my opinion, to debar them of all claim to the interference of a Court of equity to enforce, at their suit, any right which they acquired by virtue of their having signed and accepted the deed within the time prescribed. They and Mieure only of the creditors having executed the deed, stand according to its provisions, as preferred creditors, and entitled to appropriate the whole of the trust fund, if necessary, to the satisfaction of their debts. The testimony taken in the suit of Stevens and the other schedule creditors, however, discloses the fact that the deed was signed by Mieure, and by Mallory, in the name of Phippen & Mallory, with the express understanding that the deed should enure to *477 the benefit of all the creditors as fully as if each of the others had also signed the deed. Phippen & Mallory now repudiate this understanding, and avail themselves of their position to claim for themselves and Mieure the whole of the trust fund to the exclusion of the other creditors. This conduct, taken in connection with the fact disclosed in the testimony of Mieure, that Mallory had proposed to him that they should sign the deed and claim the benefit of it to the exclusion of the other creditors; and only consented to the understanding above mentioned upon being warned by Mieure, that if he did not the other creditors should be notified of his course, and thus have an opportunity also of signing the deed, furnishes, I think, sufficient proof that the use now sought to be made of the deed by Mallorwas one contemplated by him at the time he b party to it. Such being the origin and nature claim, Phippen & Mallory, as plaintiffs in a equity, were, in my opinion, entitled to no aid whatever; and the Chancellor, for the reason stated, did right, I think, in dismissing their bill, ther their position as defendants in the suit brought by the schedule creditors will so far avail them as to give them the right to insist that they shall not be compelled to yield their place in the deed, except on the condition of being allowed to receive, according to the understanding with Mieure, their pro rata share of the fund, is a question reserved by the Chancellor for a future adjudication, which I do not wish to anticipate by any expression of opinion further than what has been rendered necessary in passing upon their rights in their own suit. As yet no step has been taken in either branch of the proceedings of which the appellants have, in my opinion, any right to complain; and I am for affirming the decree.
*478 Baldwin, J.
This is an appeal from a joint decree, rendered in two suits embracing the same subject and involving the same controversy, and heard together objection: and the appeal has therefore brought 11P causes for adjudication here. In one of them, that first instituted, Mallory & Phippen are the plaintiffs ; and in consequence of the omission as defendants of all the creditors secured by the trust deed in question, except Mieure, the merits of the controversy are not fully developed in that suit. But in the other, brought by nearly all the creditors secured by the deed very shortly after the first, the merits of the controversy have been fully developed, by the pleadings, proceedings and proofs, between the proper parties. It is not to be supposed for a moment that it would be proper, from separate and unconnected views of the two cases, to render a decree repugnant and conflicting in itself in regard to the rights of the parties and the relief consequent thereupon. We must therefore, of necessity, look in the first place to the suit in which the merits have been fully developed, for the consideration and determination thereof, and the result will then designate the disposition to be made of the other case.
In Virginia the principle is established that a deed of trust made by a debtor conveying his property for the security of creditors, which is in all other respects fair and bona fide, is not to be treated as fraudulent because it imposes upon the creditors intended to be secured the condition of releasing to the grantor so much of their respective demands as may remain unsatisfied after the application thereto of the proceeds of the trust subject, and requires of them their acceptance of the provisions of the deed within a given time. Skipwith’s ex’or v. Cunningham, 8 Leigh 271. The effect of such a condition is to give the whole benefit of the trust to the creditors who comply with' it, to the exclusion of *479 those who fail to do so within the prescribed period. It has somewhat the nature of a forfeiture, and there ought to be perfect fairness and good faith on the part of the creditors seeking to avail themselves of it. If therefore some of the creditors, with the design of ex-eluding the rest, resort to false representations or other deceptive arts, by which the latter are surprised or deluded, and so prevented from acceding to the terms proposed in the deed, such misconduct furnishes a proper ground for relief in a Court of equity.
I think it appears from the record, that by common understanding and agreement amongst the creditors, including the defendants Mallory & Phippen, it was determined, in consequence of apprehensions entertained in respect to the validity of the deed, that none of them would become parties to the instrument, but that the same should be suffered to become inoperative, by their failure to affix their signatures within the prescribed period of thirty days; that in conformity with this understanding and agreement the deed was not signed by any of the creditors, with the exception of Mallory & Phippen, and the defendant Mieure; that within a day or. two before the expiration of the time limited, Mallory and Mieure went together to the clerk’s office where the deed was deposited and recorded, and then and there signed the same, the latter individually, and the former for himself and his partner Phippen; that Mieure acted for the honest purpose of preserving to the creditors in general intended to be secured by the deed the benefit of its provisions, by admitting them to a participation therein; and Mallory for the dishonest purpose, and with the preconceived design, of taking the other creditors by surprise, excl uding them from all resort to the property, and appropriating it to the satisfaction of the debt due to himself and partner; and that Mallory accomplished his purpose by taking advantage of the general delusion and general expectation of *480 the creditors to which he had contributed, by lying by . , , until it was too late to warn the other creditors, unless by the vigilance and diligence of Mieure; and by quie).jng tjje jatt01.; (wh0 had indignantly rejected a propos^on t0 become his confederate, and threatened to rouse the other creditors,) by consenting to concur with ■him in admitting them to participation in the benefits of the trust.
These facts, I think, are established by the deposition of Mieure, of whose competency there can be no doubt, his evidence being directly against his own pecuniary interest, which, like that of Mallory, is to exclude the other creditors from all participation in the trust subject. The testimony of Mieure is strongly corroborated and sustained by the deposition of Durham, if the latter be a competent witness, which is a question of some difficulty, from the peculiar nature of the case. It is a question which I do not deem it necessary to consider, -and I shall therefore not rely upon the evidence of Durham, but treat Mieure as the only witness for the plaintiffs.
The credibility of Mieure is quite obvious, and the weight of his testimony is not impaired by the rule of evidence that requires a responsive answer, negativing allegations of the bill to be overcome by two witnesses, or one witness and corroborating circumstances. The rule is not applicable to a case like this, in which the respondent does not speak from his own personal knowledge. The answer though purporting to be that of Mallory & Phippen, is in fact the answer of Phippen alone; and was sworn to and filed by him only, and not by Mallory, against whom the bill is taken for confessed. It is a sweeping answer putting in issue by denial general allegations of the bill, but evading the details therein set forth in regard to the misconduct of Mallory, as to which the respondent Phippen knew nothing personally, though seeking to avail himself of *481 it, and in regard to which he does not undertake to express any knowledge or even belief.
The veracious testimony of Mieure is therefore sufficient in itself, and I need not even refer to the circumstances of the case by which it is corroborated. In regard to the deposition of Mallory, one of the plaintiffs, filed after the rendition of the decree, if the matter of it were entitled to any weight, it is so obviously irregular and incompetent, that in my view of the case it would be a waste of words to make any remarks upon if.
It seems to me clear that the plaintiffs are entitled to relief within the scope of the allegations of their bill, but not to that specifically designated in the bill, which seeks to set aside the deed of trust altogether, and enforce their supposed rights as schedule creditors subsequently acquired when Durham took the oath of insolvency. But that relief would, I think, be improper, the sound objection being not to the validity but the abuse of the deed, which was regularly accepted by both Mieure and Mallory, and avowedly with the view of admitting the other trust creditors into participation with them of its benefits. The purpose of Mieure was bona fide, and though that of Mallory was not so, it may be treated as if it had been; and it cannot be doubted that it was competent for them to waive any exclusive advantage to themselves, and constitute themselves trustees for the other creditors intended to be secured. To abrogate the deed would be wrong and injurious in regard to some of the trust creditors, who were not also schedule creditors, including Mallory &. Phippen, and against them the plaintiffs are entitled to relief only upon the condition of doing equity, according to the well established rule which operates in favour of wrong doers, however iniquitous and fraudulent their conduct may have been. It would be improper also in *482 respect to Durham, against whom the trust ought to be carried out upon the prescribed condition of his being released from the demands of the creditors so far as unsat-g£e¿ ky application of the trust subject.
Mallory & Phippen, for the reasons already stated, are not 'aggrieved by so much of the Chancellor’s decree as dismisses their bill with costs, that being the legitimate consequence of a decision against them upon the merits in the other suit, in which any equities on their part are reserved for the final decree, by which complete justice may be done all round amongst the parties. It is true the reason for dismissing the bill of Mallory &> Phippen is stated to be that the deed of trust is fraudulent and void; but the presumption is that the Chancellor had in mind the fraudulent operation sought to be given to the deed, and that he did not mean to treat the provisions of the deed as nought, directly in the teeth of the express decision of this Court in the case of Skipwith’s ex'or v. Cunningham. And however this may be, the decree is merely interlocutory, with the proper reservation, and we are not to anticipate that it will be carried out by the final decree upon erroneous principles.
I think there is no error in the decree to the prejudice of the appellants, and that it ought to be affirmed.
Allen, J.
The case of Skipwith v. Cunningham has affirmed the right of the debtor conveying all his property for the benefit of his creditors, to exact a general release from the creditors accepting the provisions of the deed, as the condition on which they shall participate in the fund provided. The deed in this case cannot be assailed on that ground; nor is there any evidence of actual fraud in its execution. The evidence however, I think, shews that there was an understanding on the part of the creditors, including the appellants, that the proceeds of the property embraced in the trust *483 should be applied to the payment of all the debts named in the deed in the same manner as if all had signed it. The appellants therefore have been guilty of the fraudulent attempt to acquire an unfair advantage over the other creditors, in the effort to exclude them from the benefits of the deed. Still it seems to me the Court below erred in dismissing the bill filed by the appellants to enforce the execution of the deed. Though the case came on for hearing together with the bill filed by the judgment creditors to impeach the deed for fraud, there was no necessary connection between the causes. The decree dismissing the bill is a final adjudication against the appellants. Mallory & Phippen are not judgment creditors. Their whole claim to satisfaction of their debt, or any part of it, out of this property, rests upon the deed, and this the Court by its decree declares to be fraudulent and void, and therefore dismisses the bill. If this decree stands, of what avail is the instruction of the Court in the case of the creditors directing the commissioner to make alternative apportionments of the fund amongst the creditors, one embracing, the other excluding the debt of Mallory & Phippen ? Resting as they must do on the deed alone, and that being adjudged in so many words to be fraudulent and void, it is difficult to perceive how they can be let in to participate in the fund. The general creditors claim, not under but against the deed ; they assert their legal lien; and when by the decree in the case of the appellants the deed is put out of the way as utterly void, the property must of necessity be distributed amongst the creditors at whose suit the debtor has taken the insolvent oath. Considering the deed as valid, and that the conduct of the appellants in asserting an exclusive claim to the benefits of it, though improper as it regards the other creditors, could not avoid the deed or do away with the effect of an acceptance of its provisions, it only remained for the Court to carry into *484 execution the agreement and understanding of the parties i and to apply the proceeds to the debts named, in the same way as if the creditors had signed it. If they ka(j s|gtle¿ they would have released their debtor for the residue of their debts. This has been done by Mallory & Phippen.
The debtor having made a fair dedication of his property upon terms which the law justified him in imposing, has a right to insist upon a release from all who claim to participate. And the fund should have been divided between the creditors who have signed and such of those named in the deed as may agree to the terms prescribed. Such a distribution of the trust fund can only be made in the suit instituted by Mallory & Phippen to execute the trust; and would be totally inconsistent with the case made by the general creditors, who rely on their legal lien alone; and repudiate the deed. And it would present a most anomalous case, were the Court, after a solemn decree declaring the deed fraudulent and void in a suit brought to enforce it, to proceed in a suit brought to impeach it, to distribute the trust fund as though the deed were a valid security.
The rule that the party to entitle himself to relief must appear with clean hands, cannot be applied to this case without injustice to others as well as the appellants, the plaintiffs in the Court below. The deed if valid divested the debtor of his property and vested it in the trustee for the benefit of the creditors who signed within the period prescribed. The signatures of Mallory & Phippen and Mieure imparted vitality to the deed ; and the fund eould only be administered by the trustee or under the direction of a Court of equity. When therefore the trustee declined to act, a Court of equity was constrained upon the application of any party interested to interpose and protect the fund. And its jurisdiction having once attached it must go on to dispose of *485 the subject according to the rights of the parties. The bill was not filed to set up a fraudulent deed, that is conceded to be good and valid ; the claim therefore as preferred by the bill was proper, and the objection goes, not to the validity of the deed, but to the extent of the rights of the creditors named, as modified by the understanding and agreement amongst them. This therefore is nothing more than the ordinary case of a party who has rights proper to be enforced in a Court of equity, claiming more than the proof shews him entitled to. The Court in such cases may, in the exercise of its discretion, subject the party to costs ; but it cannot refuse relief of some kind. This will appear more clearly if the case is viewed by itself and without reference to the bill filed by the creditors after the institution of the suit by Mallory & Phippen. Could the Court if that were the sole case pending, have dismissed the bill after its jurisdiction had attached and it had actually taken possession of the trust fund ? It must of necessity go on to dispose of the fund ; if the deed is sustained it could not be restored to the debtor for he had parted with all right to it. Nor would it be proper to place it in the hands of the trustee, even if as in this case he had not declined to act. Nothing would remain for the Court to do but to enquire into the rights of the parties and to distribute the fund accordingly. A dismissal of the bill would have been erroneous in the case supposed, and there does not seem to be any distinction between that and the case before us. But in this case the error is aggravated by the decree declaring the deed fraudulent and void; thus precluding the Court from ever treating it as a valid subsisting security for any purpose as between these parties, in any subsequent proceeding. I think the decree should be reversed, and the cause remanded with instructions to hear both causes together and to distribute the trust fund amongst *486 the creditors who have signed the deed, and such others of the creditors named therein as may elect to come in and release the debtor according to the terms of the , _ deed.
But the other Judges differ from me, and the decree is therefore affirmed.